**SO ORDERED.**

**SIGNED this 12 day of February, 2016.**

_____
**David M. Warren
United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
## EASTERN DISTRICT OF NORTH CAROLINA
### RALEIGH DIVISION

| | |
|---|---|
| IN RE: | CASE NO. 13-06970-8-DMW |
| JOHN WILLIAM PERSINGER, | CHAPTER 7 |
| DEBTOR | |
| GREGORY B. CRAMPTON, TRUSTEE, | |
| PLAINTIFF | |
| vs. | ADVERSARY PROCEEDING NO. 14-00119-8-DMW |
| GERALDINE R. IMMEDIATO, | |
| DEFENDANT | |

### MEMORANDUM OPINION REGARDING
### PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

This matter comes before the court upon the Trustee's Motion for Summary Judgment ("Summary Judgment Motion") filed by Gregory B. Crampton, Trustee ("Plaintiff") on March 9, 2015 and the Response to Motion for Summary Judgment filed by Geraldine R. Immediato ("Defendant") on March 30, 2015. The court conducted hearings on May 26, 2015 and on

November 9, 2015 in Raleigh, North Carolina. Steven C. Newton, Esq. and Gregory B. Crampton, Esq. appeared for the Plaintiff, and John G. Rhyne, Esq. appeared for the Defendant. Based upon the pleadings, memoranda, discovery evidence, and arguments of counsel, the court makes the following findings of fact and conclusions of law:

## JURISDICTION

1. This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(H), and the court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334. *See Hutson v. M.J. Soffe Co. (In re National Gas Distributors, LLC)*, 412 B.R. 758, 760 (Bankr. E.D.N.C. 2009) (holding that adversary proceeding to recover alleged fraudulent transfer is a "core proceeding" that bankruptcy court can hear and determine).

2. The court has the authority to hear this matter pursuant to the General Order of Reference entered August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

## PROCEDURAL BACKGROUND

3. John William Persinger ("Debtor") filed a voluntary petition ("Petition") for relief under Chapter 7 of the United States Bankruptcy Code on November 7, 2013 ("Petition Date"), and the court appointed the Plaintiff to administer the estate pursuant to 11 U.S.C. § 704.

4. On July 24, 2014, the Plaintiff initiated this adversary proceeding by filing a Complaint against the Defendant. In the Complaint, the Plaintiff seeks to avoid as fraudulent pursuant to 11 U.S.C. § 548(a)(1) a pre-petition transfer ("Transfer") from the Debtor to the Defendant of real property located at 936 Hawley Road, Kenley, North Carolina ("Property") and to recover the Property for the benefit of the Debtor's bankruptcy estate pursuant to 11 U.S.C. § 550.

5. On September 19, 2014, the Defendant filed an Answer to Complaint denying that the Transfer is avoidable under 11 U.S.C. § 548(a). Alternatively, the Defendant asserted a defense under 11 U.S.C. § 548(c), alleging that the Defendant is good faith transferee of the Property and thus entitled to a lien on the Property for alleged value given in exchange for the Transfer.

6. The court first conducted a hearing on the Summary Judgment Motion on May 26, 2015. At the time of this hearing, the Debtor's bankruptcy proceeding was designated as "no asset," so proofs of claim were not required to be filed in the case. The court determined that the amount of claims against the estate was a relevant factor in considering the Summary Judgment Motion; therefore, the court continued the hearing to allow creditors to file proofs of claim.

7. On May 27, 2015, the court issued a Notice of Need to File Proof of Claim Due to Recovery of Assets that instructed creditors who wish to share in any distribution of funds from the Debtor's estate to file a proof of claim by August 29, 2015 ("Bar Date"). Unsecured claims totaling $11,984.00 were filed prior to the Bar Date.[1]

8. The court conducted its final hearing ("Hearing") on the Summary Judgment motion on November 9, 2015.

FACTUAL BACKGROUND

9. The Defendant is the daughter of the Debtor and Geneva M. Persinger ("Geneva").

10. On or about June 24, 1988, the Debtor and Geneva acquired the Property pursuant to a Deed recorded in Book 1353, Page 288, Wilson County Register of Deeds.

11. Sometime between 1988 and 2000, Geneva died, making the Debtor the sole owner of the Property, and the Debtor subsequently married Mary Shamblin Persinger ("Mary").

---

[1] The Defendant also filed a proof of claim for the amount of $46,000.00 which she claims is secured by the Property pursuant to the 11 U.S.C. § 548(c) defense asserted in this adversary proceeding. The Plaintiff filed an objection to this claim on November 5, 2015, and on December 30, 2015, the court entered an Order allowing the objection.

3

12. On or about December 13, 2000, the Debtor and Mary executed a North Carolina General Warranty Deed, recorded in Book 1790, Page 748, Wilson County Register of Deeds, conveying the Property to themselves as tenants by the entirety.

13. The Property is encumbered by a Deed of Trust ("DOT"), recorded in Book 1918, Page 56, Wilson County Register of Deeds on November 22, 2002 in favor of Wells Fargo Bank, N.A. ("Wells Fargo"). The DOT secures a Promissory Note from Wells Fargo to the Debtor and/or Mary.[2] The court will refer to the Promissory Note and the DOT as the "Mortgage Loan."

14. On or about September 1, 2008, the Debtor and Mary, as "sellers owners," and the Defendant entered into a Lease to Buy ("Lease") agreement pursuant to which the Debtor and Mary purported to sell the Property to the Defendant. The Lease specifically provides as follows:

> The price is $135,000.00. Payment of $500.00 to begin September 1, 2008 and each month hereafter to pay the mortgage that the sellers have on this property, until Geraldine R. Immediato, widow can arrange financing.

15. After execution of the Lease, the Defendant began making the monthly payments due under the Mortgage Loan directly to Wells Fargo; however, the Defendant did not assume the Mortgage Loan. As of the Hearing, the Defendant still had not assumed the Mortgage Loan. In addition to the payments to Wells Fargo, the Defendant began paying property taxes and maintaining insurance coverage for the Property.

16. On October 23, 2009, the Defendant filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code, Case Number 09-09277-8-RDD ("2009 Bankruptcy"). In the 2009 Bankruptcy, the Defendant did not schedule the Property as an asset of her bankruptcy estate, did not claim any exemptions in the Property, and did not schedule Wells

---

[2] Neither party to this adversary proceeding produced a copy of the Promissory Note evidencing the Mortgage Loan, and Wells Fargo did not file a proof of claim for this obligation; therefore, the original amount and terms of the Mortgage Loan are unknown to the court.

4

Fargo as a creditor. On her Schedule G—Executory Contracts and Unexpired Leases, the Defendant scheduled the Lease as a "residential lease with option to buy." The Schedule G indicated that the Defendant intended to assume the Lease; however, the trustee appointed in the case did not assume the Lease pursuant to 11 U.S.C. § 365.

17.    On or about February 2, 2010, the Defendant received a discharge in the 2009 Bankruptcy pursuant to 11 U.S.C. § 727. After her discharge and the closing of the 2009 Bankruptcy, the Defendant continued making the Mortgage Loan payments to Wells Fargo and paying taxes and insurance on the Property.

18.    On or about November 4, 2011, the Lease was recorded in Book 2464, Page 562, Wilson County Register of Deeds.

19.    On or about December 23, 2012, Mary died, once again making the Debtor the sole owner of the Property.

20.    On July 23, 2013 the Wilson County Superior Court entered a Default Judgment against the Debtor and in favor of Charles Hales and Pamela Hales ("Hales") for the amount of $31,020.18, File No. 13-CVS-1209.

21.    On or about August 1, 2013, the Transfer occurred when the Debtor conveyed the Property to the Defendant pursuant to a North Carolina General Warranty Deed ("2013 Deed") recorded in Book 2542, Page 793, Wilson County Register of Deeds. The excise tax listed on the 2013 Deed is $0.00, indicating no consideration for the Transfer.

22.    At the time of the Transfer, the tax value of the Property was $104,800.00, and the balance due Wells Fargo on the Mortgage Loan was $43,536.61.

23. The Debtor filed the Petition just over three (3) months after the Transfer. On his bankruptcy schedules, the Debtor listed assets totaling $108,410.75 and liabilities totaling $140,123.39. In addition, the Debtor claimed property exemptions totaling $55,500.83.

24. Since the execution of the Lease and through the present, the Defendant has resided at the Property and has made all Mortgage Loan payments to Wells Fargo. In addition, the Defendant has paid all property taxes and maintained insurance coverage for the Property. Beyond these payments of the Mortgage Loan, taxes, and insurance, the Defendant has not made any payments directly to the Debtor or Mary in connection with the Lease.

## DISCUSSION

### Standard of Review

25. Rule 56 of the Federal Rules of Civil Procedure, incorporated by Rule 7056 of the Federal Rules of Bankruptcy Procedure, provides that "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). When considering a motion for summary judgment, "the court must consider whether a reasonable jury could find in favor of the non-moving party, taking all inferences to be drawn from the underlying facts in the light most favorable to the non-movant . . . ." *Humboldt Express, Inc. v. The Wise Co. (In re Apex Express Corp.)*, 190 F.3d 624 (4th Cir. 1999) (citations omitted). Summary judgment is proper 'if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.'" *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346 F.3d 514, 519 (4th Cir. 2003) (quoting Fed. R. Civ. P. 56(c) (1963) (amended 2010)).

Avoidance of Fraudulent Transfers

26. The United States Bankruptcy Code ("Code") allows a trustee to avoid certain transfers of an interest of a debtor in property incurred within two years prior to the bankruptcy petition. 11 U.S.C. § 548(a)(1). The avoidance of such transfers may be founded on actual fraud pursuant to 11 U.S.C. § 548(a)(1)(A) or constructive fraud pursuant to 11 U.S.C. § 548(a)(1)(B). *Angell v. Ber Care, Inc. (In re Caremerica, Inc.)*, 409 B.R. 737, 755 (Bankr. E.D.N.C. 2009). "Under § 548(a)(1), a transfer is avoidable if it was either actually fraudulent in that it '(i) had at its purpose an intent to hinder, delay or defraud the debtor's creditors,' or that it was constructively fraudulent in that it '(ii) was made while the debtor was in a precarious financial condition, and the transaction did not provide the debtor with a reasonably equivalent value in exchange for the item transferred.'" *Id.* (quoting 5 *Collier on Bankruptcy*, ¶ 548.01 (Alan N. Resnick & Henry J. Sommer, eds, 15th ed. rev.)).

27. <u>The Transfer was constructively fraudulent</u>. The court will first consider whether the Transfer was constructively fraudulent under 11 U.S.C. § 548(a)(1)(B), because although the Complaint seeks avoidance of the Transfer under either 11 U.S.C. §§ 548(a)(1)(A) and (B), the Summary Judgment Motion only requests summary judgment as to the constructive fraudulent transfer claim. To prevail on this claim, the Plaintiff must establish that (i) the Transfer constituted a transfer of an interest of the Debtor in property; (ii) the Transfer was made within two years of the Petition Date; (iii) the Debtor received less than a "reasonably equivalent value" in exchange for the Transfer; and (iv) the Debtor was insolvent on the date of the Transfer or became insolvent as a result of the Transfer. As explained in detail below, the court finds that the Plaintiff has met his burden on all four of these elements, and the Transfer is avoidable under 11 U.S.C. § 548(a)(1)(B) as a matter of law.

  a. <u>The Transfer was a transfer of an interest of the Debtor in property</u>.  There is no dispute between the parties that at some time prior to the Petition Date, the Property was transferred to the Defendant from either the Debtor or the Debtor and Mary; therefore, the court easily finds that first element of a constructive fraudulent transfer claim is met.  The court further finds that because the Property was subject to the DOT, the Debtor did not have legal title to the Property and was only able to transfer his equitable interest.  *See Skinner v. Preferred Credit*, 638 S.E.2d 203, 209 (N.C. 2006) (holding that a deed of trust is a three-party arrangement in which the borrower conveys legal title to real property to a trustee to hold for the benefit of the lender until repayment of the loan, with the borrower retaining equitable title).

  b. <u>The Transfer was made within two years of the Petition Date</u>.  The Plaintiff contends that the Transfer occurred at the time the 2013 Deed was executed and recorded; however, the Defendant asserts that the Transfer actually occurred when the Lease was either executed in 2008 or recorded in 2011.  This determination is crucial, because the 2013 Deed was executed and recorded within two years of the Petition Date, but the Lease was both executed and recorded more than two years prior to the Petition Date.  The Defendant's assertion that the Transfer effectively occurred in 2008 is based upon the premise that the Lease is not a true lease but rather an installment sales contract, the execution of which transferred the Debtor's equitable interest in the property to the Defendant.  The court rejects this argument and holds that the Transfer occurred with the execution and recordation of the 2013 Deed.

   i. <u>The Lease is not an installment sales contract</u>.  North Carolina courts recognize that "[a]n installment land contract is a '[t]ype of contract by which [a]

8

buyer is required to make periodic payments toward [the] purchase price of land and only on the last payment is the seller required to deliver a deed.'" *Boyd v. Watts*, 342 S.E.2d 840, 842 (N.C. 1986) (quoting Black's Law Dictionary 717 (rev. 5th ed. 1979)). This type of contract "is a financing device in addition to being a contract dealing with the necessary details of the sale and purchase . . . ." *Id.* (quoting J. Webster, *Real Estate Law in North Carolina* § 138 (Hetrick rev. 1981)). While the Lease sets forth a purchase price of $135,000.00 for the Property, the Lease does not suggest that the Defendant will make installment payments until the $135,000.00 is fully paid. Instead, the Lease provides for the Defendant to make monthly payments of $500.00 until she can "arrange for financing." The court interprets this provision to mean that the Defendant is leasing the Property until she can arrange for financing to allow her to purchase the Property at the agreed upon price.[3] Even if the court determines that the Lease is an installment sales contract, no transfer of the Debtor's interest in the Property took place at the time the Lease was executed, because "[i]t is well settled that the purchaser of land, when let into possession under the contract of purchase, is simply an occupant of it at the will of the vendor, and he so continues until the purchase money shall be paid." *Brannock v. Fletcher*, 155 S.E.2d 532 (N.C. 1967) (quoting *Allen v. Taylor*, 1 S.E. 462, 463 (N.C. 1887)).

---

[3] In an Affidavit filed with the court on March 30, 2015, the Defendant attested that "an agreement was reached between myself, my father, and Mary Shamblin Persinger whereby I would own the subject property after I had paid $135,000.00 to my father and Mary Shamblin Persinger. In order to retire this debt, I was to make 270 payments of $500 per month to pay off the existing mortgage and to pay taxes and insurance." This statement that the term of payments was intended to be 270 months directly conflicts with the Lease's express language that the term of payments was "until Geraldine R. Immediato, widow can arrange financing." Parol evidence cannot be received to contradict or alter the terms of a contract in writing; therefore, the court did not consider the Defendant's Affidavit in reaching its determination that the Lease is not an installment sales contract. *See S.F. Bowser & Co. v. Tarry*, 72 S.E. 74, 75-76 (N.C. 1911).

    ii.  <u>The Lease is a true lease</u>.  In North Carolina, "[a] valid lease contains four essential elements:  (1) identity of landlord and tenant, (2) description of land to be leased, (3) a statement of the terms of the lease, and (4) rental or other consideration to be paid." *Purchase Nursery, Inc. v. Edgerton*, 568 S.E.2d 904, 907 (N.C. App. 2002) (citing *Fuller v. Southland Corp.*, 290 S.E.2d 754, 759 (N.C. App. 1982), *disc. rev. denied*, 294 S.E.2d 223 (N.C. 1982)).  The court holds that the Lease qualifies as a valid lease, and no transfer of any interest in the Property from the Debtor the Defendant occurred until the execution and recording of the 2013 Deed, which was well within two years of the Petition Date.

    A.  The Lease identifies the Debtor and Mary as "sellers owners" and acts as a contract for the Defendant ultimately to purchase the Property from them for $135,000.00.  However, as the contract name "Lease to Buy" plainly suggests, the Lease further sets forth that the Defendant will lease the Property by paying $500.00 per month toward the Mortgage Loan until she is in a financial position to complete the contracted purchase.  This intent is further evidenced by the Defendant's scheduling of the Lease in her 2009 Bankruptcy as a "residential lease with option to buy."

    B.  While the Defendant suggests that the recordation of the Lease evidences an intended transfer of the Property, the fact that the Lease was recorded three years after its execution is strong evidence that the document was intended as a Lease.  North Carolina requires that a lease of land for more than three years must be recorded to be effective against creditors and subsequent purchasers for value. *See* N.C. Gen. Stat. § 47-

10

18(a) (2005); *New Bar Partnership v. Martin*, 729 S.E.2d 675, 685 (N.C. App. 2012). The Lease's term of until the Defendant "can arrange financing" was indefinite at the time the Lease was executed, and the Defendant recorded the Lease shortly after three years of being in possession of the Property under the Lease. The timing of the recordation suggests compliance with the North Carolina recording statute rather than coincidence.

c. <u>The Debtor did not receive reasonably equivalent value for the Transfer</u>. When faced with issues of "reasonably equivalent value," "the court is to be given considerable latitude to make a determination by considering all the facts and circumstances surrounding the transaction in question." *In re Summit Place, LLC*, 298 B.R. 62, 73 (Bankr. W.D.N.C. 2002) (citing *In re Bennett Funding Group, Inc.*, 220 B.R. 743, 769 (Bankr. N.D.N.Y. 1997)). The Fourth Circuit holds that when determining whether reasonable equivalent value was given, "the proper focus is on the net effect of the transfers on the debtor's estate, the funds available to unsecured creditors. As long as the unsecured creditors are no worse off . . . no fraudulent transfer has occurred." *Harman v. First American Bank of Maryland (In re Jeffrey Bigelow Design Group, Inc.)*, 956 F.2d 479, 484 (4th Cir. 1992).

i. <u>The value of the Property at the time of the Transfer was $104,800.00</u>. The date for defining reasonable equivalence of value is the date of the transfer. *Cooper v. Ashley Communications, Inc. (In re Morris Communications NC, Inc.)*, 914 F.2d 458, 466 (4th Cir. 1990). The only provided evidence of the value of the Property on the date of the Transfer is the tax valuation of $104,800.00;

11

therefore, the court will use this figure for determining whether the Debtor received a reasonably equivalent value in exchange for the Transfer. The Defendant attempted to provide the court with evidence of an appraisal[4] of the Property at a much lower value and noted that the tax valuation was reduced upon reassessment; however, the court cannot consider these alleged values because they were not in effect at the time of the Transfer, and "'[n]either subsequent depreciation in nor appreciation in value of the consideration affects the value question of whether reasonable equivalent value was given.'" *Id.* (quoting *Collier on Bankruptcy*, § 548.09 at p. 116 (15th Ed. 1984)).

    ii.    <u>The Defendant provided no value to the Debtor in exchange for the Transfer</u>. Having determined that the value of the Property received by the Defendant from the Transfer was $104,800.00, the court must now consider what, if any, value the Defendant gave the Defendant in exchange for the Property. The 2013 Deed shows $0.00 excise tax paid, and the parties do not dispute that the Defendant paid nothing to the Debtor at or around the time of the Transfer. The Defendant argues that her execution of the Lease constitutes reasonably equivalent value for purposes of 11 U.S.C. § 548(a)(1)(B). Specifically, the Defendant asserts that her pre-Transfer payments of the Mortgage Loan, taxes, and insurance and her taking the Property subject to the Mortgage Loan and the underlying DOT constitute value to the Debtor's estate. While noting that reasonably equivalent

---

[4] This appraisal, dated October 1, 2015, was attached to an Affidavit of the Defendant filed with the court on November 2, 2015. On November 5, 2015, the Plaintiff filed a Trustee's Objection to Defendant's Affidavit and Motion to Strike ("Strike Motion"), alleging that the Affidavit should be stricken, because it was filed after the discovery period and after the Summary Judgment Motion was filed and initially argued before the court. At the Hearing, the court did not make a specific ruling on the Strike Motion but now holds that the Strike Motion is moot, because this Opinion and corresponding Judgment dispose of the adversary proceeding, and the court did not consider the appraisal in its ruling.

value does not necessarily have to be given contemporaneously with a transfer, the court rejects the Defendant's arguments. *See LandAmerica Financial Group, Inc. v. Southern California Edison Co.*, 525 B.R. 308, 315 (Bankr. E.D. Va. 2015) (holding there is no requirement that consideration be given contemporaneous with a transfer). Contrarily, the court finds that neither the Defendant's pre-Transfer payments nor her anticipated post-Transfer payments on the Mortgage resulted in *any* value to the Debtor's bankruptcy estate.

      A.    The Defendant's pre-Transfer payments of the Mortgage Loan, taxes, and insurance were made pursuant to the terms of the Lease, which the court has already determined to be a true lease under North Carolina law. The payments were nothing more than rent for the Defendant's use and occupancy of the Property. The fact that the Mortgage Loan payments were made directly to Wells Fargo and reduced the balance owing on the Mortgage Loan is irrelevant. Had the Defendant made the rental payments to the Debtor rather than Wells Fargo (or made no payments at all), the Debtor would have still needed to pay the Mortgage Loan or risk foreclosure of the Property; therefore, the Mortgage Loan balance at the time of the Transfer would be the same. As a result, the Debtor and his bankruptcy estate received no value from the Defendant in exchange for the Transfer.

      B.    The Defendant never assumed the Mortgage Loan and took the Property subject to the DOT securing the Mortgage Loan . *See Branch Banking & Trust Co. v. Kenyon Inv. Corp.*, 332 S.E.2d 186, 191-92 (N.C.

App. 1985) (citations omitted) (holding that where there is no assumption agreement, a transferee takes land subject to a prior mortgage). When there is no assumption of a debt, the transferee has no personal liability for the debt, and the transferor remains personally liable. *Id.* at 192 (citations omitted). Further, pursuant to 11 U.S.C. § 548(d)(2)(A), "the term 'value' would exclude future considerations, at least to the extent they remain unperformed." *Jackson v. Adler, Coleman Clearing Corp. (In re Adler, Coleman Clearing Corp.)*, 263 B.R. 406, 467 (S.D.N.Y. 2001) (citing *Bailey v. Metzger, Shadyac & Schwartz (In re Butcher)*, 72 B.R. 447 (Bankr. E.D. Tenn. 1987) (holding that "[f]ull performance on the debtor's part in return for an executory promise to perform on the other party falls short of the requisite standard of equivalent worth at the time of the transaction")). Because the Debtor remains liable on the Mortgage Loan, the Defendant's agreement to make future post-Transfer payments on the Mortgage Loan does not constitute value or reduce the estate's liabilities. The offer to make the payments on the Mortgage Loan is not binding and is merely gratuitous.

        C.     The Plaintiff argues that the execution of the Lease cannot qualify as reasonably equivalent value, because the trustee in the 2009 Bankruptcy did not assume the Lease and it is, therefore, deemed rejected. *See* 11 U.S.C. § 356(d)(1) ("In a case under chapter 7 of this title, if the trustee does not assume or reject an executory contract or unexpired lease of residential real property . . . then such contract or lease is deemed rejected"). The Defendant counters this argument by citing cases holding

14

that automatic rejection of a lease under 11 U.S.C. § 365(d)(1) does not terminate the lease and results in an abandonment of the lease back to the debtor. *See Miller v. Chateau Communities (In re Miller)*, 282 F.3d 874, 877-78 (6th Cir. 2002); *Stoltz v. Brattleboro Hous. Auth.*, 259 B.R. 255 (D. Vt. 2001). The court does not need to address this issue, because it has already determined that no consideration given by the Defendant in connection with the Lease benefitted the Debtor's bankruptcy estate. Regardless of whether the effectiveness of the Lease survived the 2009 Bankruptcy[5], the court finds that the Debtor did not receive a reasonably equivalent value in exchange for the Transfer.

    d.    <u>The Debtor was insolvent at the time of the Transfer or became insolvent as a result of the Transfer</u>. The Code defines "insolvent" as a 'financial condition such that the sum of [an] entity's debts is greater than all of such entity's property, at a fair valuation, exclusive of . . . property that may be exempted from property of the estate . . ." 11 U.S.C. § 101(32)(A). This court uses a "balance sheet test" for assessing a debtor's insolvency, "which involves comparing the fair value of the debtor's assets at the time of the transfer with the liabilities on the same date." *Angell v. Montague Farms, Inc. (In re Tanglewood Farms, Inc., of Elizabeth City)*, 515 B.R. 218, 224 (Bankr. E.D.N.C. 2014) (citations omitted). The Plaintiff details the assets and liabilities disclosed on the Debtor's bankruptcy schedules to support his allegation of the Debtor's insolvency. The schedules show that on the Petition Date, the Debtor's non-exempt assets exceeded his liabilities by

---

[5] The argument that the Lease survived the 2007 Bankruptcy actually weakens the Defendant's position that the Lease is not a true lease and is more of an installment sales contract or some property interest greater than a leasehold interest.

15

$87,213.47. Because the Petition was filed just three months after the Transfer, the court finds this sufficient evidence that the Debtor was insolvent on the date of the Transfer or became insolvent as a result of the Transfer. *See Id.* at 224 (noting that the court can consider a debtor's "egregious insolvency as of the petition date to determine the plausibility of whether the debtor was insolvent on the dates of earlier transfers").

28. <u>The Transfer may also be actually fraudulent</u>.  The Summary Judgment Motion did not seek relief on the claim of actual fraud pursuant to 11 U.S.C. § 548(a)(1)(A), and consideration of this claim is not necessary, because the court already found that the Transfer is avoidable as constructively fraudulent under 11 U.S.C. § 548(a)(1)(B).  Because the issue was not part of the Summary Judgment Motion or argued by the parties at the Hearing, the court will not make a final determination but notes that the facts of the case suggest that the Transfer may also be avoidable under 11 U.S.C. § 548(a)(1)(A).  To prevail on this claim, the Plaintiff must establish that (i) the Transfer constituted a transfer or an interest of the Debtor in property; (ii) the Transfer was made within two years of the Petition Date; and (iii) the Debtor made the Transfer with the actual intent to hinder, delay, or defraud creditors.  The first two elements are the same as for constructive fraud and already determined to be satisfied.  Accordingly, the court will focus on the third element of whether the Transfer was made with actual intent to hinder, delay, or defraud creditors.  "Because the determination of actual intent can be difficult, courts look to 'badges of fraud' to determine whether the transfer was made with the intent to defraud creditors.  While not direct evidence of fraud, the concurrence of facts and circumstances, including the badges of fraud, can lead to the conclusion that the debtor's conduct was motivated by such fraudulent intent. " *Whitaker v. Mortgage Miracles, Inc. (In re Summit Place, LLC)*, 298 B.R. 62, 70 (Bankr. W.D.N.C. 2002) (citing *In re World Vision Entertainment, Inc.*, 275 B.R. 641, 656 (Bankr. M.D. Fla. 2002); *In re*

*Cohen*, 142 B.R. 720, 728-29 (Bankr. E.D. Pa. 1992)). Badges of fraud include whether the transfer was to an insider, concealment of the transfer, reasonably equivalent value in exchange for the transfer, the debtor's insolvency at the time of the transfer, and the proximity in time of the transfer to the incurrence of a substantial debt. *Id.* at 70, n. 1 (citing *In re Kelsey*, 270 B.R. 776, 782 (10th Cir. BAP 2001). The court already concluded that the Debtor was insolvent at the time of the Transfer and did not receive reasonably equivalent value in exchange for the Property. The other listed badges of fraud may also exist. *See Id.* ("The presence of a single badge of fraud is not sufficient to establish actual fraudulent intent; however, the confluence of several can constitute conclusive evidence of an actual intent to defraud, . . .").

      a.    <u>The Transfer was to an insider of the Debtor.</u> The Defendant is the Debtor's daughter and, therefore, and "insider" under 11 U.S.C. § 101(31). Under 11 U.S.C. § 548(a)(1)(A), courts must closely scrutinize transfers between related parties, and such transfers made without adequate consideration create a presumption of actual fraudulent intent. *Tannever v. Smoot*, 257 F.3d 401, 408 (4th Cir. 2001) (citations omitted). If the issue were litigated, this presumption establishes a *prima facie* case for the Plaintiff and shifts the burden of proof to the Defendant to establish the absence of fraudulent intent. *Id.*

      b.    <u>The Debtor initially concealed the Transfer.</u> In his initial Statement of Financial Affairs filed with the court concurrent with the Petition, the Debtor answered "None" in response to Question 10 which directs a debtor to "[l]ist all other property, . . . transferred either absolutely or as security within two years immediately preceding the commencement of this case." After his meeting of creditors pursuant to 11 U.S.C. § 341, at which time the Plaintiff may have discovered the Transfer, the Debtor filed an Amended

17

Statement of Financial Affairs that properly disclosed the Transfer in response to Question 10.

  c. <u>The Transfer was made soon after judgment entered against the Debtor.</u>  The Hales obtained their default judgment against the Debtor just nine (9) days before the Transfer.  The timing of the Transfer indicates a convenient change in the characterization of the Lease in to a sale that now is claimed to have effected five years before. The Transfer was a good way to protect the Property from the Hales' judgment or at least frustrate the judgment execution.

Defense to Avoidance of Fraudulent Transfers

29. If a transfer is avoidable under 11 U.S.C. § 548, "a transferee . . . of such a transfer . . . that *takes for value and in good faith* . . . may retain any interest transferred . . . to the extent that such transferee . . . gave value to the debtor in exchange for such transfer . . . ." 11 U.S.C. § 548(c) (emphasis added). *See Gold v. First Tennessee Bank National Association (In re Taneja)*, 743 F.3d 423, 429 (4th Cir. 2014) (holding that 11 U.S.C. § 548(c) provides a transferee with an affirmative defense to a trustee's avoidance action if the transferee can show that it accepted the transfer "for value and in good faith").  The Defendant asserted this defense in her Answer to the Plaintiff's Complaint.  Because the court already determined that the Defendant did not give value to the Debtor in exchange for the Transfer, this defense is irrelevant, and the court need not consider whether the Defendant accepted the Property in good faith.  However, the court notes that the badges of fraud previously reviewed may also suggest that the Defendant is not a good faith transferee. *Id.* (holding that "in evaluating whether a transferee has established an affirmative defense under Section 548(c), a court is required to consider whether the transferee actually was aware or should have been aware, at the time of the transfers and in accordance with routine

business practices, that the transferor-debtor intended to 'hinder, delay, or defraud any entity to which the debtor was or became ... indebted.'").

### Recovery of Avoided Transfers

30.     If a transfer is avoided under 11 U.S.C. § 548, "the trustee may recover, for the benefit of the estate, the property transferred, or . . . . the value of such property, from the initial transferee of such transfer or the entity for whose benefit such transfer was made; . . " 11 U.S.C. § 550(a)(1).  "The avoidance of a transfer and the recovery from the transferee are distinct from one another, [and] . . . 'the transaction must first be avoided before a plaintiff can recover under 11 U.S.C. § 550.'" *Guttman v. Construction Program Group (In re Railworks Corp.)*, 760 F.3d 398, 403 (4th Cir. 2014) (quoting *IBT Int'l, Inc. v. Northern (In re Int'l Admin. Servs., Inc.)*, 408 F.3d 689, 703 (11th Cir. 2005)).  After a transfer is avoided, 11 U.S.C. § 550(a) "identifies who is responsible for payment." *Id.*  In this case, the Defendant is undoubtedly the initial transferee of the Property as evidenced by the 2013 Deed; therefore, the Plaintiff is entitled to recover from the Defendant the Property or the value of the Property.

### CONCLUSION

31.     For the foregoing reasons, the court holds that the Transfer is avoidable pursuant to 11 U.S.C. § 548(a)(1)(B), and the Plaintiff is entitled to judgment against the Defendant for the recovery of the Property or the value of the Property pursuant to 11 U.S.C. § 550(a).  This Opinion constitutes the court's findings of facts and conclusions of law, and the court shall enter a separate Judgment granting the Summary Judgment Motion.

**END OF DOCUMENT**